UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**TAMMY L. ROBINETTE,**

        Plaintiff,

Case No.: 3:09-cv-00600-slc

vs.

**WESTCONSIN CREDIT UNION,**

        Defendant.

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO MOTION TO DISMISS**

**FACT SUMMARY**

Plaintiff was employed by the Defendant, Westconsin Credit Union, from August 18, 2004, until her termination almost five years later on June 16, 2009. (Compl. ¶3; 11.17.09 Robinette Aff. ¶2) The last position she held with the Defendant was Office Manager at the New Richmond, Wisconsin location. (11.17.09 Robinette Aff. ¶3)

By June 1, 2009, the Plaintiff and her husband determined they had no choice but to file a bankruptcy petition. They met with a bankruptcy attorney on that date and tendered a check in the amount of $2,500 to that attorney for fees and costs. They were advised that the petition would be filed as soon as the schedules could be prepared. (11.17.09 Robinette Aff. ¶4)

The check for fees and costs cleared Plaintiff's bank account on June 8, 2009. (11.17.09 Robinette Aff. ¶5)

On June 15, 2009, Plaintiff was questioned by her supervisor about judgments which had been posted in the local newspaper publication listing her husband as the debtor. (Compl. ¶4)

In response, Plaintiff advised her supervisor that due to their financial circumstances, Plaintiff and her husband had retained a bankruptcy attorney and that they were in the process of filing a bankruptcy petition. (Compl. ¶5)

Plaintiff, together with her husband, was individually responsible on loans to Westconsin, among other liabilities, which would be included as debts to be discharged in the bankruptcy petition. (Compl. ¶6)

Later in the day on June 15, 2009, Plaintiff was approached by the same supervisor and told that he could not tell her what debts she could or could not discharge in the bankruptcy. (Compl. ¶7)

The next day, June 16, 2009, the same supervisor told Plaintiff that she was terminated because she was "filing for bankruptcy" and that "did not make Westconsin look good." (Compl. ¶8)

Plaintiff had been an exemplary employee and there was no other reason for her termination. (Compl. ¶9)

A bankruptcy petition was filed on behalf of the Plaintiff and her husband on June 25, 2009. (Compl. ¶10)

## STANDARD OF REVIEW

This matter is before the court on Defendant's motion to dismiss. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Dismissal of an action under this motion is only warranted if the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429-30 (7th Cir.1996).

Based on the analysis set forth below, Plaintiff respectfully submits that she has more than adequately plead both claims against the Defendant and, as such, requests the motion to dismiss be denied.[1]

**ARGUMENT**

I. **THE PROTECTIONS OF SECTION 525(B) APPLY TO BOTH PRE-PETITION AND POST-PETITION DISCRIMINATORY ACTS.**

In a two paragraph argument, and citing to a lone 9th Circuit Case, *In re Majewski*, 310 F.3d 653 (9th Cir. 2002), the Defendant asserts that Plaintiff cannot bring a Section 525(b) retaliation claim because she had not yet filed her bankruptcy petition at the time she was terminated. To date, this writer has located only five reported cases squarely addressing this issue, none of which hale from the 7th Circuit. Two of these cases soundly reject the *Majewski* analysis stating that the protections afforded by Section 525(b) cannot be dictated by a footrace to the courthouse; in fact the *Majewski* dissent so recognized as well. Plaintiff submits that the cases rejecting the *Majewski* majority's rationale are the more persuasive authority especially under the facts of this case. Indeed, to not allow Plaintiff Section 525(b) protection under these facts would eviscerate the clear and stated purpose of the statute.[2]

Section 525 of the Bankruptcy Code protects individuals from discriminatory treatment. The statute provides two standards: one for governmental agencies in §525(a) and one for private employers in §525(b). The standard governing private employers, which was not enacted until 1984, provides:

---

[1] The Plaintiff has submitted a brief affidavit with this filing; however, Defendant's motion is capable of dismissal without reference to that affidavit.

[2] The two cases which reject the *Majewski* analysis are from courts in the 8th and 2nd Circuits, *In re Tinker,* 99 B.R. 957 (Bankr.W.D.Mo.1989) and *In re Mayo*, 322 B.R. 712, 717 (Bankr.D.Vt. Mar 17, 2005). As stated, *Majewski* is a 9th Circuit case and the other two that employ the *Majewski* analysis are both from the 11th Circuit. *In re Kanouse,* 168 B.R. 441 (S.D.Fla.1994) and *In re Davis*, Slip Copy, 2009 WL 2242326 (Bankr.M.D.Ala.2009).

> (b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt:
>
> > (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
> >
> > (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
> >
> > (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(b).

Utilizing a formalistic interpretation of this statute, the *Majewski* court found that its anti-discrimination provision only applied to individuals who were or had been debtors. Therefore, if a first time filer was discriminated against before a petition was filed, there was no protection under Section 525(b) – period. However, this is not the only manner in which this statute could be interpreted. In fact, as recognized by the dissent in *Majewski*, there are three possible interpretations of this language. "It is possible to read the statute [as the *Majweski* majority did]... and find that discrimination based solely on an intent to file for bankruptcy remains entirely outside of the statutory purview as long as the discrimination occurs before the moment of filing. However, it can also be read to state that discrimination based on an intent to file for bankruptcy is comprehended by the statute, but becomes unlawful only if the victim of discrimination actually files a formal petition [and i]t can also be read to declare that discrimination based on an intent to file for bankruptcy is unlawful in all circumstances, but that a victim of discrimination only has a federal remedy under [sec]525(b) once he has filed a formal petition. As these three facially plausible interpretations demonstrate, the true meaning of the statute cannot be discerned with certainty from the text alone." *Majewski,* 310 Fd.3d at 657.

The *Majewski* majority went on to apply the first interpretation; however, based on the analysis set forth herein, Plaintiff submits the *Majewski* majority to be in error.

When faced with textual ambiguity, the court's objective must be "to ascertain the intent of Congress and to give effect to legislative will." ***United States v. Taylor***, 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). Indeed, even the clear text of the Bankruptcy Code may be non-conclusive in the " 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " In such cases, the intention of the drafters, rather than the strict language, controls." ***United States v. Ron Pair Enters., Inc.,*** 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citations omitted) (quoting ***Griffin v. Oceanic Contractors, Inc.,*** 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982), in an interpretation of the Bankruptcy Code). ***See also Dewsnup v. Timm***, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (construing the Bankruptcy Code to effect Congressional intent despite text potentially suggesting alternative readings).

Applying the ***Majewski's*** majority analysis to the facts of this case would mean that if for whatever reason, the Plaintiff's petition was filed 1 second after her termination she would have no Section 525(b) remedy, even though she was told she was being fired for her stated intent to file a bankruptcy petition. This is clearly not the result intended by the drafters of Section 525(b) as held in a pre-*Majewski* case - ***In re Tinker***, 99 B.R. 957 (Bankr.W.D.Mo.1989) - and more recently in ***In re Mayo***, 322 B.R. 712, 717 (Bankr.D.Vt. Mar 17, 2005).

***In re Tinker*** was the first court to address the assertion that a debtor was protected from termination only if the petition was filed before the termination. The ***Tinker*** court rejected this argument stating, "the Court cannot believe that it was the intent of Congress to set up a footrace

5

between a prospective bankrupt and his or her employer. To follow the [employer's] argument would be to say that if the employer can get the firing done one minute before the petition is filed, there never could be a § 525(b) complaint." *In re Tinker,* 99 B.R. at 960.

The Missouri bankruptcy court's analysis in *Tinker* was later fully adopted in *In re Mayo*, a decision emanating from a Vermont bankruptcy court. Citing the dissent in *Majewski*, the *Mayo* court stated, "A worker like [the debtor] should not be stripped of his rights either because his employer succeeds in firing him before he can get his papers on file in bankruptcy court, or because this court is afraid of encouraging him to avail himself of a remedy that Congress intended would be available to him." *In re Mayo*, 322 B.R. at 717. Likewise, to not allow the Plaintiff in this action Section 525(b) protection simply because the petition was filed after her termination would ignore the protections intended by the statute. It simply can't be discriminatory to fire an employee one second after the petition is filed but not one second before. The absurdity of the application of the *Majewski* interpretation is perhaps the best evidence of its flawed reasoning.

Indeed, if the statute is interpreted to apply only to discrimination which occurs AFTER the filing of a bankruptcy petition, the provisions in subsection (b)(2) would be meaningless. That section prohibits, *inter alia*, discrimination against a debtor who was insolvent BEFORE the petition was filed. If the statute was only intended to prohibit discrimination AFTER the petition was filed, there would have been no need for a proscription against pre-filing discrimination. Courts must give effect to all relevant sections of the Code, and all sections must be read in a collective fashion wherever possible. *See Buttitta v. City of Chicago,* 9 F.3d 1198, 1204 (7th Cir.1993) *See also Darling v. Bowen,* 878 F.2d 1069 (8th Cir.1989); *Green v. C.I.R.,* 707 F.2d 404 (9th Cir.1983) (court must strive to interpret language in one section of a statute

6

consistently with the language of other sections and the statute as a whole.) Applying these canons of statutory construction, pre-petition discrimination must also be contemplated by the statute for to hold otherwise would make provisions of the statute meaningless.

Section 525(b) was enacted to prohibit the acts of the Defendant in this action as plead in the complaint. While Plaintiff will be put to her proof on the ultimate issues, Plaintiff requests this court adopt the more reasoned and logical rationale of *Tinker* and *Mayo* and deny the motion to dismiss the Section 525(b) claim.

II. **PLAINTIFF'S WRONGFUL TERMINATION CLAIM IS NOT CAPABLE OF DISMISSAL EITHER.**

The general rule in Wisconsin is that an at-will employee may be terminated for any reason or no reason without judicial remedy. *Goggins v. Rogers Mem'l Hosp. Inc.,* 2004 WI App 113, ¶ 18, 274 Wis.2d 754, 683 N.W.2d 510. However, the supreme court recognized a narrow exception to the employment-at-will doctrine in *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834 (1983), allowing an at-will employee a cause of action if his or her discharge violated a fundamental and well-defined public policy. To state a cause of action for wrongful discharge in violation of public policy, an employee must (1) identify a fundamental and well-defined public policy sufficient to trigger the exception to the employment-at-will doctrine, and (2) demonstrate that the discharge violated that public policy. *Goggins,* 274 Wis.2d 754, ¶ 19, 683 N.W.2d 510. "Once the plaintiff satisfies these first two steps, the burden shifts to the employer to show that the discharge actually was sparked by just cause." *Strozinsky v. School Dist. of Brown Deer,* 2000 WI 97, ¶ 37, 237 Wis.2d 19, 614 N.W.2d 443**.**

Public policy is evidenced by existing law, *Tatge v. Chambers & Owen, Inc.,* 219 Wis.2d 99, 113, 579 N.W.2d 217 (1998) (quoting *Brockmeyer,* 113 Wis.2d at 572-73, 335 N.W.2d 834), and existing law includes constitutional, statutory and administrative provisions.

7

*Tatge*, 219 Wis.2d at 113 n. 7, 579 N.W.2d 217. The public policy evidenced by existing law applicable to this case is the right to file a bankruptcy petition without fear of retaliation from one's employer and that public policy is found in the protections afforded by Section 525(b).

The Defendant will undoubtedly reply to this argument in two ways. First, it will argue that Section 525(b) does not apply and, therefore, there is no public policy preventing a retaliatory termination of the nature which exists in this case. Second, it will argue that if Section 525(b) does apply, that statute preempts the Plaintiff's common law wrongful discharge claim. Plaintiff will address both of these positions in turn.

### A. Plaintiff's Common Law Wrongful Discharge Claim Survives Whether This Court Determines 525(b) Is Applicable or Not.

Whether a complaint identifies a fundamental and well-defined public policy sufficient to meet the narrow exception to the employment-at-will doctrine is a question of law. ***Strozinsky***, 237 Wis.2d 19, ¶ 31, 614 N.W.2d 443. On a motion to dismiss, the court must determine whether the plaintiff "has identified a fundamental and well defined public policy in the spirit or the letter of constitutional, statutory, or administrative provisions sufficient to trigger the exception to the employment-at-will doctrine." ***See id.***, ¶ 48, 614 N.W.2d 443. While "not every statutory, constitutional, or administrative provision invariably sets forth a clear mandate of public policy," our public policy determination is not restricted to the literal language of a provision. ***Id***. We focus on the spirit as well as the content of a statute when determining whether it reflects a fundamental and well-defined public policy. ***Id.***

There can be no dispute that Section 525(b) was meant to prevent employment discrimination based on the filing of a bankruptcy petition by an employee. That is clearly the public policy and purpose behind its enactment, and the Wisconsin courts have indicated that they are not restricted to the literal language of a provision in determining public policy. As

such, even if one were to accept the hyper-technical, and supposedly literal, interpretation of the statute employed by the *Majewski* court, that alone is not the "arbiter" of public policy for purposes Wisconsin law. Plaintiff submits that under Wisconsin law, the spirit of the statute preventing "bankruptcy discrimination" would easily flow to pre-petition discrimination as well as post-petition discrimination. As such, even if this court dismisses Plaintiff's Section 525(b) claim, Plaintiffs wrongful discharge claim survives.

Defendant argues that a public policy wrongful termination exists only if a discharged employee identifies a fundamental and well-defined public policy as evidenced in existing constitutional, statutory, or administrative law, and then alleges that his or her employer instructed him or her to violate that public policy. Defendant further argues that as it never instructed the Plaintiff to violate anything, there can be no wrongful discharge claim under Wisconsin law. While Plaintiff recognizes the language in the holdings upon which Defendant relies for this argument, Defendant's interpretation, under the facts of this case, puts Wisconsin law on its head. The statute upon which the Plaintiff relies, Section 525(b) proscribes acts of the employer not the employee, and in this case it is the employer who violated public policy by terminating the Plaintiff. The law requires a "connection between the discharge and the public policy" to establish a claim. *Wandry v. Bull's Eye Credit Union*, 129 Wis.2d 37, 47, 384 N.W.2d 325 (1986). That connection is certainly more than established here.

> B. **The Existence of Section 525(b) Does Not Preempt the Common Law Wrongful Discharge Claim.**

Plaintiff recognizes the holding in *Brockmeyer*, where the Wisconsin Supreme Court observed that "the legislature has enacted a variety of statutes to prohibit certain types of discharges" and "[w]here the legislature has created a statutory remedy for a wrongful discharge, that remedy is exclusive." *Brockmeyer*, 113 Wis.2d at 576 n. 17, 335 N.W.2d 834. As such, if

9

the legislature creates a remedial process, the court will not override that process with the judicially-created public policy exception. ***Larson v. City of Tomah***, 193 Wis.2d 225, 231, 532 N.W.2d 726 (1995) (citing ***Brockmeyer*** for this proposition).

In ***Repetti v. Sysco Corp***. 300 Wis.2d 568, 730 N.W.2d 189 (Ct. App. 2007), this analysis was extended to federal statutes as well. However, unlike comparable anti-discrimination statutes which abound in federal and state law, Section 525(b) contains absolutely no remedy provisions let alone a procedure by which violations can be prosecuted. ***Matter of McNeely*** 82 B.R. 628, 633 (Bkrtcy.S.D.Ga.,1987) (Section 525(b) does not specify what remedies are available to an aggrieved debtor who shows that he or she has been discriminated against with respect to employment) In essence, the statute creates liability but is silent as to the applicable damages to be awarded. As such, because no remedy is statutorily specified, the statute does not serve to preempt the common law wrongful discharge claim.

This exact analysis was employed by a New Hampshire court in ***Wenners v. Great State Beverages, Inc.***, 140 N.H. 100, 663 A.2d 623 (N.H. 1995). In ***Wenners***, the court concluded that: (1) Section 525(b) did not bar an employee's common-law claims for wrongful termination, and (2) reliance on the Bankruptcy Code to support the public policy prong of a state wrongful termination claim did not result in federal preemption of claim. ***Wenners, Id.*** The court came to this conclusion using the guidelines for federal preemption found in ***English v. General Electric Co.,*** 496 U.S. 72, 78, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990) - "First, Congress can define explicitly the extent to which its enactments pre-empt state law. Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." ***Id.*** at 79, 110 S.Ct. at 2275. "Finally, state law is pre-empted to the extent that it actually conflicts with federal law."

*Id.* Relative to "bankruptcy discrimination," the ***Wenners*** court found no intent to preempt state law or to occupy that field exclusively and further found no conflict with allowing a state remedy in addition to a federal remedy when pursing a retaliatory discharge claim. Plaintiff submits that the same result occurs here. There is no statutory language indicating that a Section 525(b) violation was mean to be the sole remedy afforded a victim of bankruptcy discharge perhaps most amply evidenced by the lack of a statutory remedy and given this lack a remedy there is clearly no conflict with pursuing the wrongful discharge claim in addition to the statutory claim. As such, Plaintiff respectfully submits the state wrongful discharge claim is not preempted and requests this court so rule. ***See Goggins v. Rogers Memorial Hosp. Inc.*** 274 Wis.2d 754, 683 N.W.2d 510 (Ct. App. 2004) (civil actions for wrongful discharge are not preempted simply because a statutory remedy is also available).

## CONCLUSION

For the reasons stated herein, Plaintiff requests the Defendant's motion to dismiss be denied in its entirety.

Dated this 17th day of November, 2009.

                                                       s/ Carol S. Dittmar
                                                      Carol S. Dittmar
                                                      State Bar No. 1017344
                                                      Attorney for Plaintiff

Carol Dittmar Law Office, LLC
24 West Cedar Street
Chippewa Falls, WI 54729
Telephone: 715.720.1889
Facsimile: 866.431.3721