IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAMMY L. ROBINETTE,

       Plaintiff,
v.                  OPINION AND ORDER

WESTconsin CREDIT UNION,         09-cv-600-vis

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  This is a civil action brought originally in the Circuit Court for St. Croix County and removed to this court by defendant, WESTconsin Credit Union. Plaintiff contends that defendant discriminated against her in violation of both 11 U.S.C. § 525 of the bankruptcy code and Wisconsin laws prohibiting wrongful discharge by terminating her when it learned that she and her husband planned to file a bankruptcy petition.

  Jurisdiction is present under 28 U.S.C. §§ 1334 and 1367. The case is before the court on defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6).

  Plaintiff's claims raise interesting and rarely litigated issues on which there is little published law. The applicable bankruptcy statute, 11 U.S.C. § 525, protects persons who have filed for bankruptcy from being terminated by their employer or otherwise

1

discriminated against in respect to their employment. Defendant contends that plaintiff has no federal claim because § 525(b) applies only to someone whose employment is terminated after the individual *has filed* for bankruptcy. It contends also that plaintiff has no state law claim for wrongful discharge because she (1) has not identified a fundamental public policy at stake; (2) she cannot establish that she was terminated because she refused to violate a statutory provision; and (3) she has a federal remedy available to her. In addition, defendant asks the court to strike plaintiff's requests for punitive damages and attorney fees under Fed. R. Civ. P. 12(f).

I conclude that plaintiff has stated a plausible claim for relief under 11 U.S.C. § 525(b) because the statute can be fairly read as extending to employers who terminate or otherwise discriminate against an employee who intends to file a petition for bankruptcy and does so. However, I agree with defendant that plaintiff has no state law claim for wrongful termination so long as § 525(b) provides her a federal statutory remedy. This conclusion makes it unnecessary to decide whether to exercise supplemental jurisdiction over plaintiff's state law claim that would expand Wisconsin's public policy exception to the employment at-will doctrine. Accordingly, I will deny defendant's motion to dismiss the § 525(b) claim and grant defendant's motion to dismiss plaintiff's state law claim for wrongful termination.

As to plaintiff's claim for punitive damages and attorney fees under § 525(b), plaintiff has failed to argue that the law would allow her to seek such relief under § 525(b) and there

2

is no obvious support for that position. Accordingly, I will grant defendant's request to strike those requests for relief.

From the complaint, I find that plaintiff has fairly alleged the following facts.

ALLEGATIONS OF FACT

Plaintiff Tammy Robinette is a resident of New Richmond, Wisconsin. Defendant WESTconsin Credit Union is a federally insured Wisconsin credit union located in Menomonie, Wisconsin.

Defendant employed plaintiff from August 18, 2004 to June 16, 2009. On June 15, 2009, plaintiff's supervisor questioned her about judgments that had been posted in the local newspaper listing plaintiff's husband as the debtor. Plaintiff told her supervisor that she and her husband had retained an attorney and were going to file a bankruptcy petition. Plaintiff and her husband had a loan from defendant and planned to include that debt in their bankruptcy petition.

The next day, June 16, plaintiff's supervisor told plaintiff that she was terminated because she was "filing for bankruptcy," which would not "make WESTconsin look good." Plaintiff was an exemplary employee. She and her husband filed a bankruptcy petition on June 25, 2009.

3

OPINION

A.  Section 525(b)

In relevant part, 11 U.S.C. § 525(b) provides:

No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such a debtor or bankrupt, solely because such debtor or bankrupt–

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

A "debtor" is a "person or municipality concerning which a case under this title has been commenced."  11 U.S.C. § 101(13).

At first reading, the statute seems to limit the protections it provides to persons who have filed a proceeding in bankruptcy or did so in the past, leaving plaintiff without a federal remedy.  Whether this impression is accurate is a question no court in this circuit has had occasion to address.

Defendant cites the only federal appellate decision on the question, In re Majewski, 310 F.3d 653 (9th Cir. 2002), in which the court read the plain language of the statute as covering only an individual "who is or has been a debtor" under the Act, concluding that § 525 does not provide a claim to an employee who is terminated before filing a bankruptcy petition.  Defendant cites the other two cases in which courts have read the language in the

4

same way: In re Davis, 2009 WL 2242326 (Bankr. M.D. Ala. 2009) (adopting reasoning of Majewski), and In re Kanouse, 168 B.R. 441 (S.D. Fla. 1994) (finding statutory language unambiguous and holding that protections apply only after bankruptcy petition filed).

Plaintiff relies on the dissenting opinion in Majewski, in which Judge Reinhardt disagreed with the majority about its characterization of the language of § 525(b) as "plain." He argued that a narrow interpretation of § 525(b) undercut Congress's efforts to "insulate debtors from unfair employment practices directly tied to their attempts to get a 'fresh start.'" Plaintiff also cites In re Tinker, 99 B.R. 957, 960 (Bankr. W.D. Mo. 1989) (concluding in dicta that Congress did not intend the protections of § 525 to depend on who won the race to the courthouse), and In re Mayo, 322 B.R. 712, 717 (Bankr. D. Vt. 2005) (in dicta, adopting reasoning of dissent in Majewski and expressing agreement with holding in Tinker).

Sparse as the precedent in this area is, the majority and dissenting opinions in Majewski, 310 F.3d 653, provide a comprehensive review of the arguments on both sides of the issue. In concluding that § 525(b) should not be read to apply to pre-filing discrimination, the majority read the language as plain and unambiguous, requiring the court to enforce it according to its terms. Id. at 656 (citing United States v. Ron Pair Enterprises, 489 U.S. 235, 241 (1989) (in interpreting bankruptcy statutes, if "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'"). The majority

5

found no merit to the dissent's argument that courts should give § 525(b) the same liberal reading they give other statutes banning discriminatory retaliation.  It conceded the uniformly broad treatment of the anti-retaliation provisions of Title VII of the Civil Rights Act, the Fair Labor Standards Act and other statutes such as the Federal Mine Health and Safety Act, the Federal Railroad Safety Act and the Clean Water Act, but it found these provisions distinguishable from the one in § 525(b).  Those in the listed statutes facilitate the enforcement of the statutes by bringing to light improprieties in the workplace, so it makes sense to encourage reports of illegal behavior, whereas, "[w]hile we encourage reporting of statutory violations, we do not wish to encourage persons to file for bankruptcy or to threaten bankruptcy.  We wish only to protect those persons who have invoked the bankruptcy law's protections to obtain a fresh start."  Id. at 655.  The court added that "[b]ankruptcy's fresh start comes at the cost of actually filing a bankruptcy petition, turning one's assets over to the court and repaying debts that can be paid.  One is not entitled to the law's protections, including employment security and the automatic stay of litigation, before being bound by its other consequences."  Id. at 656.

The majority chastised the dissent for relying on legislative history to support a liberal reading of the statute, pointing out that the history it cited was included with a 1983 bankruptcy bill that was never enacted.  (Section 525(b) was added in 1984 legislation.)  Thus, the majority said, it was irrelevant whether Congress had said in connection with that

6

bill that the amendment of § 525 was intended to extend the protections to persons employed in the private sector "on the basis that that person *has been* or *will be* a debtor in bankruptcy." Omnibus Bankruptcy Improvements Act of 1983, S. 445, 98th Cong. § 352 (1983) (emphasis added).

As the majority noted, Judge Reinhardt relied in his dissent upon the liberal readings given to anti-retaliation provisions in other statutes, on the legislative history accompanying the proposed amendment of § 525 in the 1983 proposed act and on his view that the statute was not plain and unambiguous. On this last point, he explained why he thought the language was susceptible to a variety of readings.

> It is possible to read the statute as the majority does, and find that discrimination based solely on an intent to file for bankruptcy remains entirely outside of the statutory purview as long as the discrimination occurs before the moment of filing. However, it can also be read to state that discrimination based on an intent to file for bankruptcy is comprehended by the statute, but becomes unlawful only if the victim of discrimination actually files a formal petition. Cf. Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th Cir. 2000) (noting that discrimination may be lawful under some circumstances). It can also be read to declare that discrimination based on an intent to file for bankruptcy is unlawful in all circumstances, but that a victim of discrimination only has a federal remedy under § 525(b) once he has filed a formal petition. As these three facially plausible interpretations demonstrate, the true meaning of the statute cannot be discerned with certainty from the text alone.

Id. at 657-58.

7

Having found the language ambiguous, Judge Reinhardt examined legislative history back to 1978, explaining why he believed that it showed a consistent intent on the part of Congress to insure that employers are not able to "'frustrate the Congressional policy of a fresh start for a debtor.'" Majewski, 310 F.3d at 659 (quoting S. REP. NO. 95-989, at 81 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5867 (accompanying enactment of § 525(a), prohibiting discrimination against debtors by government employees)). In 1983, when Congress first proposed § 525(b), which extended the protection to employees in the private sector, the Senate Report explained that it was intended to apply to persons who have been or will be debtors in bankruptcy.

The majority was right in noting that this history is not technically applicable to the 1984 legislation, but it is worth noting, as Judge Reinhardt did, id. at 659 n.3, that the only difference in the 1984 version of § 525(b) is that the language changed from "person" in the 1983 bill to "individual" in the 1984 version.

Judge Reinhardt took issue with the majority's characterization of the anti-retaliation provisions in other laws as directed primarily to the purpose of bringing to light illegal conduct in the work place and particularly with its conclusion that it did not want "to encourage persons to file for bankruptcy or to threaten bankruptcy." Id. at 655. In his opinion, the majority was willing to give a broad reading to the whistle blower statutes "only because the employees they protect are useful cogs in a law enforcement machine," id. at

8

661, and he saw no reason why statutes protecting individual employees from being subject to illegal actions by their employers were of any higher status than the bankruptcy code provision affirming an employee's right to enjoy specific legal protections. Id. at 662.

Judge Reinhardt pointed out that it was not unusual for the courts to read the bankruptcy code liberally when it found ambiguity. For example, In re Hudson, 859 F.2d 1418, 1421 (9th Cir. 1988), concerned 11 U.S.C. § 523(a)((9), which provided that a discharge did not discharge an individual debtor from any debt "to the extent that such debt arises from a judgment or consent decree entered in a court of record . . ." Read literally, the statute required tort claims arising out of drunken driving to have been reduced to judgment at the time of filing if the consequent debt was to be declared nondischargeable. Noting a latent ambiguity in the statute because it "does not specifically address whether a claim must be reduced to judgment or consent decree *before* the debtor files for bankruptcy," id. at 1420, the court of appeals rejected the literal reading in favor of one that would carry out Congress's intent to prevent drunken drivers from escaping liability by filing for bankruptcy protection before they had been found liable for their torts. This reading of § 523(a)(9) has been widely accepted. E.g., Matter of Selin, 104 B.R. 98 (Bankr. W.D. Wis. 1989); In re Tyler, 98 B.R. 396 (Bankr. N.D. Ill. 1989). See also In re Roberts, 2010 WL 379582 (applying reasoning of Hudson to case arising under 11 U.S.C. 1328(a)(4) involving

9

dischargeability of damages "awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual").

I find the reasoning of the dissent in Majewski more persuasive than that of the majority. Reading § 525(b) to restrict its protections to those who win the race to the courthouse would frustrate the statute's clear purpose of providing debtors a fresh start. In effect, it would apply different consequences to employers for the same discriminatory conduct. An employer could fire or demote an employee with impunity so long as it acted before the employee filed for bankruptcy; a few minutes later and its action would be covered by § 525(b). In each instance, the employer's action is the same and in both instances, the employee must have gone forward with the bankruptcy before she can seek the protections of § 525(b). The only variable is whether the employee got to the courthouse before the employer took the retaliatory employment action. It is not reasonable to believe that this "footrace" is what Congress intended in enacting § 525(b).

I do not understand the majority's position in Majewski, 310 F.3d at 655, that it does not want "to encourage persons to file for bankruptcy or to threaten bankruptcy." It cannot be suggesting that persons who have been fired or demoted would file for bankruptcy simply as a way of getting their jobs back. Perhaps it anticipates that persons who fear a firing or demotion would make unfounded threats to file bankruptcy as a proactive measure. That seems only slightly less probable, as well as unproductive. Unless the person really did

10

intend to file and did so, she would have no mechanism for claiming the protections of § 525(b). Under any circumstances, the alleged victim of retaliation must prove that her announced intent to file for bankruptcy or her actual filing was the *sole* cause for her firing or demotion. That this is not an easy standard to meet is confirmed by the absence of any cases in which the required showing has been made. Cf. In re Mayo, 322 B.R. 712 (finding that plaintiff was unable to prevail under § 525(b); although her employer had told her she would not be eligible to work as branch supervisor once she filed for bankruptcy, she resigned before she could be demoted); In re Tinker, 99 B.R. 957 (finding that although prospective bankruptcy was factor in bank's decision to terminate employee, it was not sole factor: she and her husband had refused to turn over proceeds of sale of mortgaged property).

It is true that a literal reading of the statute appears to support defendant's position, but that is not necessarily dispositive. As noted in the Majewski dissent, courts have liberally construed other anti-retaliation statutes to further the purpose of the statute. For example, Title VII, 42 U.S.C. § 2000e-3(a), makes it unlawful for employers to discriminate against any employee or applicant for employment who has opposed any employment practice or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing. The Supreme Court has read this provision as covering former employees, although the statute makes no reference to "former employees." Robinson v. Shell Oil Co.,

11

341-45 (1997). The Court of Appeals for the Seventh Circuit has read this language liberally to apply to persons who merely make informal complaints about sexual harassment without complying with company policy on filing complaints, Phelan v. Cook County, 463 F.3d 773 (7th Cir. 2006). It has done the same with the nearly identical anti-retaliation provisions of the Americans with Disability Act, 42 U.S.C. § 12203(a), Casna v. City of Loves Park, 574 F.3d 420 (7th Cir. 2009), and the FLSA, Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834, 838 (7th Cir. 2009) (reading 29 U.S.C. § 215(a)(3), which prohibits discrimination "against any employee because such employee has filed 'any complaint'" as applying to employee who has filed internal complaint despite language that seems to limit "complaint" to formal complaint). The Supreme Court has read 29 U.S.C. § 157 liberally to protect a person who gave a written sworn statement to a National Labor Relations Board field examiner, although the statute seems to protect only those employees who filed charges or gave testimony under the Act. N. L. R. B. v. Scrivener, 405 U.S. 117, 117-118, (1972).

Because I am persuaded that § 525(b)'s protections cover those who intend to and do file for bankruptcy, I find that plaintiff has stated a claim upon which relief can be granted. Therefore, defendant's motion to dismiss this claim will be denied.

B. State Law Claim

12

Defendant raises three objections to plaintiff's state law claim for wrongful discharge. First, plaintiff failed to identify a well-defined public policy in her complaint. Second, the public policy exception applies only where a plaintiff's termination resulted from an employer's request to violate a recognized public policy. Finally, Wisconsin law prevents plaintiff from bringing a wrongful termination claim when a federal statute also applies. Because I agree with defendant's third contention, it is unnecessary to address its additional arguments.

Wisconsin's narrow public policy exception to the employment at will doctrine provides that an employee has a cause of action for wrongful discharge when a discharge is contrary to a fundamental and well-defined public policy as evidenced by existing constitutional, statutory or administrative law. Tatge v. Chambers & Owen, Inc., 219 Wis. 2d 99, 113, 579 N.W.2d 217 (1998); Brockmeyer v. Dun & Bradstreet, 113 Wis. 2d 561, 572-73, 335 N.W.2d 834, 840 (1983). Defendant relies on Repetti v. Sysco Corporation, 300 Wis. 2d 568, 730 N.W.2d 189 (Ct. App. 2007), in arguing that the availability of remedies under § 525 forecloses plaintiff from bringing a wrongful termination claim. In Repetti, the court held that the public policy exception applies only where a plaintiff has no other recourse: "if the legislature creates a remedial process, the court will not override that process with the judicially-created public policy exception." Id. at 575 (citing Brockmeyer, 113 Wis. 2d at 572-73, 335 N.W.2d at 840). Accordingly, the court refused to adopt a

13

public policy exception for an employee who was fired for reporting SEC violations because the Sarbanes-Oxley whistle blower provisions provided sufficient remedies, including reinstatement and back pay. Id. at 570. Defendant contends that as in Repetti, plaintiff's § 525 claim should preclude plaintiff's state law claim for wrongful discharge.

Plaintiff attempts to distinguish Repetti by arguing that § 525(b) "contains absolutely no remedy provisions." This is technically correct, but courts have looked to 11 U.S.C. § 105(a) to fashion a remedy. In the Matter of McNeely, 82 B.R. 628, 634 (Bankr. S.D. Ga. 1987); In re Hopkins, 81 B.R. 491, 493-94 (Bankr. W.D. Ark. 1987). Section 105(a) grants courts the power to enforce provisions of the bankruptcy code. In Hopkins, 81 B.R. at 495, the court authorized an award of back pay and reinstatement, the very remedies mentioned in Repetti.

Because plaintiff may bring a claim under § 525(b) and seek appropriate remedies, she may not bring a state law claim for wrongful termination. Where the legislature has created a federal remedy for wrongful discharge, as here, that remedy is exclusive and does not warrant expansion of Wisconsin's public policy exception. Plaintiff's state claim for wrongful termination will be dismissed.

### C. Punitive Damages and Attorney Fees

14

Finally, defendant asserts that plaintiff's requests for punitive damages and attorney fees should be dismissed because she improperly listed punitive damages as a separate claim and because punitive damages and attorney fees are not available in § 525(b) actions. Although plaintiff incorrectly titled the relief she seeks as a "claim," by itself, this technical error does not mean she is precluded from seeking punitive damages in this case. Plaintiff adequately notified defendant of her claims and demands for relief as required by Fed. R. Civ. P. 8.

In support of its second argument, defendant cites Leary v. Warnaco, Inc., 251 B.R. 656, 659 (S.D. N.Y. 2000), in which the court found that an award of punitive damages and attorney fees is not appropriate under § 525(b) absent explicit authority from Congress. Id. Although other courts have fashioned various remedies for violations of the statute, none appear to have given specific attention to the availability of punitive damages. E.g., Hopkins, 66 B.R. at 833 (discussing variety of relief awarded under § 525(a) with respect to governmental units); In re Hicks, 65 B.R. 980, 984 (Bankr. W.D. Ark. 1986) (citing cases); see also Stansberry v. Uhlich Children's Home, 264 F. Supp. 2d 681, 691 (N.D. Ill. 2003) (noting that Leary is only case to discuss punitive damages under § 525(b)). In any event, because plaintiff has not supported her contention that punitive damages or attorney fees are available under § 525(b) with any argument, I find that she has waived her right to them. Stansberry, 264 F. Supp. at 691 (citing Palmquist v. Selvik, 111 F.3d 1332, 1342

15

(7th Cir. 1997) ("Even an issue expressly presented for resolution is waived if not developed.")). Accordingly, defendant's motion to strike these requests for relief will be granted.

## ORDER

IT IS ORDERED that Defendant WESTconsin's motion to dismiss, dkt. # 8, is GRANTED in part and DENIED in part:

1. Defendant's motion to dismiss plaintiff Tammy Robinette's claim brought under 11 U.S.C. § 525(b) is DENIED.

2. Defendant's motion to dismiss plaintiff's state law claim for wrongful termination is GRANTED.

3. Defendant's motion to strike plaintiff's requests for punitive damages and attorney fees is GRANTED.

Entered this 25th day of February, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge